UNITED STATES, Appellee,

v.

Staff Sergeant Howard J. CARTER Jr.,
228–82–1316, United States
Army, Appellant.

ACMR 8902658.

U.S. Army Court of Military Review.

21 Dec. 1990.

As Amended 27 Dec. 1990.

For Appellant: Captain Brian D. Bailey, JAGC, Captain Lauren B. Leeker, JAGC (on brief).

For Appellee: Colonel Alfred F. Arquilla, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Captain Randy V. Cargill, JAGC, Captain James A. Nortz, JAGC, Captain Jonathan F. Potter, JAGC, Captain Kenneth H. Goetzke, Jr., JAGC (on brief).

Before FOREMAN, HAESSIG and GRAY, Appellate Military Judges.

## OPINION OF THE COURT

FOREMAN, Senior Judge:

A military judge sitting as a general court-martial convicted the appellant, contrary to his pleas, of making and uttering 21 bad checks, with intent to defraud, in violation of Article 123a, Uniform Code of Military Justice, 10 U.S.C. § 923a (1982) [hereinafter UCMJ]. The convening authority set aside the findings of guilty pertaining to three checks but approved the remainder. The approved sentence provides for a bad-conduct discharge, confinement for two years, forfeiture of all pay and allowances, and reduction to Private E1.

This court ordered briefs on the legal and factual sufficiency of the evidence. Our analysis of the evidence was complicated by the fact that the checks were drawn on three separate accounts, a checking account with the Pentagon Federal Credit Union (PFCU), a "Thrifty Credit Service" (TCS) account with PFCU with a credit limit of $2,000.00, and a VISA account with Lomas Bank with a credit limit of $5,000.00.

To prove the offenses, the prosecution was required to prove: (a) the appellant made and uttered the checks; (b) he did so to obtain a thing of value; (c) he intended to defraud; and (d) at the time of the making and uttering, he knew that he did not and would not have sufficient funds

for payment upon presentment. Manual for Courts–Martial, United States, 1984, Part IV, paragraph 49b [hereinafter MCM, 1984]. The test for legal sufficiency is whether a rational fact finder could find all essential elements of the offense when considering the evidence in the light most favorable to the prosecution. *United States v. Rath*, 27 M.J. 600, 604 (A.C.M.R.1988), *petition denied*, 29 M.J. 284 (C.M.A.1989), and cases cited therein; Article 66, UCMJ, 10 U.S.C. § 866. In testing for factual sufficiency, the court must weigh the evidence introduced at trial, taking into consideration that the trier of fact has seen and heard the witnesses, and determine whether the offense has been proved beyond a reasonable doubt. *Id.*

The undisputed evidence in this case establishes that the appellant made and uttered the checks he was convicted of making and uttering, that he obtained money or things of value, and that the checks were dishonored by the drawee. At issue is whether the prosecution proved that the appellant intended to defraud and knew that he did not and would not have sufficient funds for payment upon presentment.

### I.  LOMAS BANK ACCOUNT

■ Turning first to the checks drawn against a line of credit with the Lomas Bank, the appellant was convicted of making and uttering five bad checks: one check for $500.00 on 22 November 1988; two checks for $450.00 on 8 December 1988; one check for $500.00 on 9 December 1988; and, one check for $500.00 on 10 December 1988. The prosecution introduced Lomas Bank statements showing that as of 17 November 1988, the appellant had available credit of $692.88, and that as of 16 December 1988, he had exceeded his credit limit by $700.00. The December statement shows that the appellant obtained a cash advance of $1051.77 on 10 November which was posted to his account on 18 November, thereby exceeding his credit limit before any of the checks were made and uttered. The bank statements reflect one payment of $300.00 which was credited to the appellant's account on 5 December 1988.

The appellant testified that he thought he and his wife had a $10,000.00 joint credit limit, because a separate VISA card had been issued to his wife and he believed it carried a separate credit limit of $5000.00. The appellant told the CID that his wife received her VISA card on or about 21–22 November 1988. The appellant's wife corroborated his testimony. The stipulated testimony of a Lomas Bank employee established that in December 1988 the appellant called the bank "because he had overdrawn his credit account." The bank statements and the appellant's statement to the CID establish that the appellant exceeded his credit limit on 10 November 1988, at least ten days before his wife received her VISA card and before the appellant had any reason to believe that his credit limit had been raised from $5000.00 to $10,-000.00. The military judge found the appellant's explanation unworthy of belief, as do we. We hold that the evidence with respect to the Lomas Bank checks is legally and factually sufficient.

### II.  PFCU THRIFTY CREDIT ACCOUNT

The appellant was convicted of making and uttering six bad checks drawn on his PFCU Thrifty Credit (TCS) account: two on 18 October 1988 for $500.00 and $800.00, one on 19 October for $600.00, one on 20 October for $600.00, one on 21 October for $500.00, and one on 22 October for $500.00.

The prosecution presented evidence that the following checks made and uttered by the appellant on his TCS account were dishonored. All TCS checks were unnumbered. Checks marked with an asterisk were not charged but were offered in evidence to prove the appellant's knowledge and intent.

| Date | Amount |
|---|---|
| 18 Oct 88 | $500.00 |
| 18 Oct 88 | 800.00 |
| 18 Oct 88 | 70.00 * |
| 18 Oct 88 | 60.00 * |
| 19 Oct 88 | 600.00 |
| 19 Oct 88 | 70.00 * |
| 19 Oct 88 | 60.00 * |
| 19 Oct 88 | 100.00 * |

| Date | Amount | |
|---|---|---|
| 19 Oct 88 | 70.00 | * |
| 19 Oct 88 | 60.00 | * |
| 20 Oct 88 | 600.00 | |
| 20 Oct 88 | 130.00 | * |
| 21 Oct 88 | 500.00 | |
| 21 Oct 88 | 150.00 | * |
| 21 Oct 88 | 600.00 | * |
| 22 Oct 88 | 500.00 | |
| 22 Oct 88 | 200.00 | * |

The prosecution presented no evidence, other than the dishonored checks, regarding the status of the appellant's account when the checks were written, but the uncontroverted testimony of the appellant establishes that his TCS credit limit was $2000.00, and that on 18 October the appellant called PFCU and was informed that he had available credit of $1800.00 in his TCS account. His testimony was partially corroborated by a PFCU employee, whose stipulated testimony established that the appellant called PFCU "[i]n October, November time frame" to find out if money orders which he had mailed had been received.

■ While the prosecution would have been entitled to a presumption of knowledge and intent to defraud upon a showing that the appellant failed to redeem the checks within five days after notification of dishonor, that presumption is not available regarding these checks because the record does not show when the appellant was first notified that the checks had been dishonored, nor does the record show when, if at all, the checks were redeemed. MCM, 1984, Part IV, para. 49c(17).

■ The appellant testified that on 18 October he sent $600.00 to his TCS account and $680.00 to his checking account but that the money orders were lost. The appellant presented testimony from a German post office employee and documentary evidence that the money orders mailed on 18 October were lost in the mail and that the appellant was reimbursed for them by the bank.

The appellant also testified that he sent additional money orders totaling about $2500.00 to PFCU, but that they were lost in the mail. The appellant was unable to produce receipts for the purchase of the money orders, but he did produce registered mail receipts showing mail sent to PFCU on 20 October, 18 November, 24 November and 9 December 1988. The appellant did not state the amounts of these lost money orders, but he told the CID that the December money order was for $1000.00, leaving a balance of $1500.00 allocated among three earlier money orders.

After reviewing the above evidence, we hold as follows:

1. The evidence is legally and factually insufficient to support the appellant's guilt regarding the 18 October 1988 checks, because they would have been covered by the $1800.00 balance in the TCS account.

2. The evidence is factually insufficient to establish the appellant's guilt regarding the 19 October 1988 check for $600.00. The check for $600.00 would have exceeded the $1800.00 balance but would have been covered by the $600.00 money order which was lost and for which the appellant was reimbursed.

3. The evidence is factually insufficient to establish the appellant's guilt regarding the 20 and 21 October checks. These October checks might have been covered by the lost money order of 20 October, if it was intended for the TCS account and was for at least $720.00. Both checks would have been covered if the money order was for at least $1160.00. Since the prosecution has the burden of proof, we will give the appellant the benefit of the doubt regarding the amount of this money order.

4. The evidence is legally and factually sufficient to prove the appellant's guilt regarding the 22 October check for $500.00, because the lost money orders would not have been sufficient to cover it.

III. PFCU CHECKING ACCOUNT

■ Turning finally to the checking account with PFCU, the prosecution presented evidence that the appellant made and uttered the following checks which were dishonored:

| Date | Check Number | Amount |
|------|--------------|--------|
| 4 Oct 88 | 901 | $500.00 |
| 9 Oct 88 | 8258 | 150.00 |
| 9 Oct 88 | 8259 | 150.00 |
| 12 Oct 88 | 8264 | 500.00 |
| 14 Oct 88 | 8267 | 200.00 |
| 15 Oct 88 | 850 | 200.00 |
| 25 Oct 88 | 916 | 150.00 |
| 6 Dec 88 | 3281 | 500.00 |
| 18 Mar 89 | 339 | 115.00 |
| 19 Mar 89 | 155 | 100.00 |

The appellant was not charged with check number 901, dated 4 October 1988, for $500.00. This check was presented solely to establish the appellant's knowledge and intent regarding the subsequent checks.

On 23 November 1988, the appellant was notified that check number 8259, dated 9 October 1988, and check number 916, dated 25 October 1988 had been dishonored. Because he did not redeem them, the amounts were involuntarily deducted from his pay in January 1989.

The appellant presented documentary proof that on 18 October 1988, he mailed a money order for $680.00 to his PFCU checking account, which was lost and for which was reimbursed. He also testified that he mailed money orders totaling $2500.00 on 20 October, 18 November, 24 November and 9 December; he presented proof of mailing but was unable to offer proof of the amounts of the money orders. He told the CID that the December money order was for $1000.00. We find the appellant's testimony to be credible, because it is hard to imagine what, other than a deposit, the appellant would have sent by registered mail to his financial institution under the circumstances of this case.

The appellant testified that PFCU closed his checking account on or about 14 March 1989, but did not notify him. The prosecution presented no evidence showing when the account was closed and no proof that the appellant was notified. The appellant's military pay continued to be sent to the checking account, but PFCU deposited it in his savings account because they had closed the checking account. The appellant produced a PFCU statement showing that on 20 March 1989, $500.00 was deposited in his savings account. The appellant testi-fied that he thought the $500.00 deposit would cover the two checks written on 18 and 19 March 1989.

After reviewing the above evidence, we hold as follows:

1. The evidence regarding check number 8258 dated 9 October 1988, is legally and factually insufficient. The prosecution did not present any account statements showing how much was on deposit in the checking account when the checks were uttered. Although the dishonor of the 4 October check for $500.00 establishes that the appellant had less than $500.00 in his account on that date, it does not establish that the appellant had less than $150.00 in his account. Since the prosecution did not establish when the appellant was notified that the check had been dishonored, the statutory presumption of knowledge and intent does not apply. MCM, 1984, Part IV, para. 49c(17).

2. The evidence regarding check number 8259 dated 9 October 1988, and check number 916 dated 25 October 1988, is legally and factually sufficient. The appellant was notified of the dishonored checks on 23 November 1988, and had not redeemed them as of 11 January 1989, when collection action was initiated.

3. The evidence regarding check number 8264 dated 12 October, check number 8267 dated 14 October, and check number 850 dated 15 October, is legally and factually sufficient. The appellant was on notice regarding the status of his account as of 4 October. The lost money orders were not mailed until several days after these checks were uttered.

4. The evidence regarding check number 3281 dated 6 December 1988, is factually insufficient. The check would have been covered by the lost money orders if they totaled at least $830.00.

5. The evidence regarding check number 339 dated 18 March 1989, and check number 155 dated 19 March 1989, is factually insufficient. Although the account was closed, the prosecution failed to show when PFCU closed it and when

the appellant was notified that it was closed. The fact that the appellant's military pay continued to be sent to the checking account and that a deposit of $500.00 was made on 20 March 1989 makes his testimony credible.

6. There is no evidence in the record of a dishonored check number 1608 dated 21 October 1988. Therefore, the evidence is legally and factually insufficient.

We have considered the appellant's allegations of ineffective assistance of counsel and vindictive prosecution and find that they are without merit.

On the basis of the errors noted and the entire record, the court affirms only so much of the finding of guilty of Specification 1 of the Charge as finds the appellant guilty of wrongfully and unlawfully making and uttering four checks: check number 8259 dated 9 October 1988 for $150.00, check number 8267 dated 14 October 1988 for $200.00, check number 850 dated 15 October for $200.00, and check number 916 dated 25 October for $150.00.

The court affirms only so much of the finding of guilty of Specification 2 of the Charge as finds the appellant guilty of wrongfully and unlawfully making and uttering three checks: check number 101 dated 22 November for $500.00, check number 104 dated 8 December 1988 for $450.00, and check number 103 dated 9 December 1988 for $500.00.

The court affirms only so much of the finding of guilty of Specification 2 of Additional Charge I as finds the appellant guilty of wrongfully and unlawfully making and uttering an unnumbered check dated 22 October 1988 for $500.00.

The court affirms only so much of the finding of guilty of the Specification of Additional Charge II as finds the appellant guilty of wrongfully and unlawfully making and uttering check number 8264 dated 12 October 1988 for $500.00 and check number 105 dated 8 December 1988 for $450.00.

The finding of guilty of Specification 1 of Additional Charge I is set aside. Specification 1 of Additional Charge I is dismissed.

The remaining findings of guilty are affirmed. The court is unable to reassess the sentence. Accordingly, the sentence is set aside. A rehearing on the sentence may be ordered by the same or another convening authority.

Judge HAESSIG and Judge GRAY concur.